THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,               CRIMINAL NUMBER 2:09-CR-20549

         Plaintiff,                              HONORABLE DENISE PAGE HOOD

v.

D-9     ADAM HUSSAIN IBRAHEEM,

         Defendant.
_____/

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, through its undersigned counsel, respectfully submits this brief response to the defendant's sentencing memorandum filed on February 28, 2011.

The guidelines the parties calculated in the Rule 11 Plea Agreement were 15 to 21 months, based upon the erroneous belief that the defendant's Criminal History Category was IV. However, as the defendant was on parole when he committed the offense of conviction here, his Criminal History Category was in fact V, giving him guidelines of 21 to 27 months. Moreover, in addition to the parole detainer from the Third Circuit Court in Detroit, the presentence investigation report states that the defendant has two outstanding bench warrants, one from the 16th District Court in 2006, and one from the Dudley District Court in Dudley, Massachusetts in 1999.

Paragraph 2(B)(a) of the Plea Agreement provides that if the "defendant's criminal history category is higher than reflected on the attached worksheets, . . . and if any such finding results in a guideline range higher than 15 to 21 months, the higher guideline range becomes the agreed range. " **Therefore, the correct sentencing guidelines, and the guidelines which this Honorable Court should apply here, are 21 to 27 months.**

The defendant asserts in his sentencing memorandum that his criminal history "over represent[s] the seriousness of past criminal conduct and/or exaggerates the Defendant's propensity to commit additional crimes." (Defendant's memorandum at p. 4.) The government disagrees with this characterization; rather, it appears that the defendant has learned little or nothing from his *eight prior convictions*. He has been given many chances by many courts in several jurisdictions, and he commits additional crimes before he has even completed serving the sentences on the prior crimes. So it is with this conviction.

Defendant further argues that his involvement in the ITSP sting here "arose in acts of desperation to support himself and his family" (Defendant's Memo at p.1), and that his "financial condition made [him] more susceptible to the persuasiveness of Luqman Abdullah when he requested Defendant to assist in transporting stolen property." (Defendant's Memo at p. 2.) To be sure, the defendant wanted the money he obtained through his criminal activity; however, as set out below, his motive was greed and not desperation; personal gratification and not concern for feeding his family.

Adam Ibraheem pleaded guilty to participating in two undercover transactions: the first transaction on December 4, 2008, and the second on January 4, 2009. The Court will recall that the City of Detroit evicted the group from the building at 4118 Joy Road for non-payment of taxes on January 20, 2009. Four days later, on January 24, 2009, Ibraheem called the Confidential Human Source (CHS) to encourage him to set up another deal, *so Ibraheem could get money before he went to the Super Bowl.* The CHS said he was uncertain whether the group would want to do any more thefts so soon after the eviction, and Ibraheem assured him that the

2

eviction and when to "hit the next lick"[1] were unrelated. Ibraheem went on to say he was willing to blow up the building that had housed the mosque so no one could have it; when the CHS warned him not say such things on the phone, Ibraheem said no one would be able to prove that he meant it, they might just be talking about a movie. Ibraheem went on to say he would not go back to jail without a fight. The tape is available for the Court, and a partial transcript of the telephone conversation is as follows.

```
January 24, 2009
1D-131, session 03

Confidential Human Source - CHS
Adam Ibraheem - Ibraheem


CHS:            Not a whole lot.  What's going on with you?

Ibraheem:       Trying to find out when's the next lick, babe?

CHS:            I, uh, I'm, right, I, I hear that.  Me, too.  I'm,
                I'm so broke.  I barely got gas in my freaking
                Jeep.  I'm, uh, I was debating, I didn't know if,
                I mean, 'cause everything that's going on if we
                should...

Ibraheem:       (Unintelligible)

CHS:            You know?

Ibraheem:       Yeah, man, uh, I'm going to head for the Super
                Bowl, man.

CHS:            Right.  Should, uh, uh...
```

---

[1] Information relating to these defendants and pre-dating this specific conspiracy verifies that the defendants use the term "hit a lick" to refer to criminal activity, including robberies and, in this case, stealing from interstate shipments.

Ibraheem:   The Super Bowl, uh, shoot, man, this week. (Unintelligible) what's this, the twenty-fifth, twenty-fourth?

CHS:        Twenty-third, I think.

Ibraheem:   No, I think it's past the twenty-third, man.

CHS:        (Laughs)

Ibraheem:   I got back on the twenty-second.

CHS:        Oh, so it's like twenty-fourth, then.

Ibraheem:   Yeah, man.  I wanted to know if we could hit that before I went (unintelligible), you know?

CHS:        Yeah, I, uh...

Ibraheem:   So...

CHS:        I would love to.  Like I said, I was debating.  I wasn't sure if, because of everything that's going on, if it would be a good idea, or if we should just lay low for a minute or...

   [*The CHS is referring to the eviction four days earlier.*]

Ibraheem:   Yeah.  Oh, no, I mean, that ain't affecting nothing like that, man.

CHS:        Okay.

Ibraheem:   It ain't affecting nothing, man.

CHS:        Okay.  I been meaning to talk with you guys about it and see what you said.

Ibraheem:   Yeah.  That ain't affecting nothing, man.  That's a whole 'nother ball game, baby.

CHS:        All right.

Ibraheem:   You know?

CHS:        Any word on what's, on what we're going to do yet?

4

| | |
|---|---|
| Ibraheem: | Well, no.  You know, we just praying like the rest of the days, man.  You know, (unintelligible) this is like the last thing is we got a place to pray, you know? |
| CHS: | Right. |
| Ibraheem: | It could be a house, man.  You know what I mean?  Everybody, I mean, you know, it ain't no thing with that building.  I mean, you know, we can always get a building.  If the building's what they want, they can have it.  You know what I'm saying?  We'll get another one. |
| CHS: | Right. |
| Ibraheem: | Everybody's sweating that. |
| CHS: | Right. |
| Ibraheem: | You know? |
| CHS: | Yeah. |
| Ibraheem: | Yeah.  As a matter of fact, as a matter of fact, if we can't have it, nobody has it.  Give me some dynamite, we'll blow it up. |
| CHS: | (Chuckles) |
| Ibraheem: | How about that? |
| CHS: | Right.  No, I, I got... |
| Ibraheem: | (Unintelligible) you know what I mean, (unintelligible) we'll blow it up.  (Unintelligible) nobody got it.  (Unintelligible) |
| CHS: | (Unintelligible) Adam, Adam, hey, Adam.  Be careful.  Okay? |
| Ibraheem: | Oh, that ain't nothing either.  That's just conversation, man.  You know what I mean? |
| CHS: | I know. |
| Ibraheem: | (Unintelligible) |

5

CHS:        Imam (unintelligible) you know, what-ya-ma-call-it, already gave me the warning about my phone, so, I'm trying to be good.

Ibraheem:   (Unintelligible) ain't no fucking way, now, what can they do to me?  Kill me?

CHS:        (Laughs)

Ibraheem:   I mean, (unintelligible) so what?

CHS:        You're right.  You're right, too.  'Cause I don't care neither.

Ibraheem:   (Unintelligible)

CHS:        I don't care neither.  You're right.  Whatever. I'll take a vacation for a couple years back in the pen.  Didn't bother me none.

Ibraheem:   (Unintelligible) What can they do?  Lock me up? You know, they got to catch me first.  Shit, I ain't going out without a fight, nigger.

CHS:        (Laughs)

Ibraheem:   And if you lock me up, even if you lock me up, you got to have, you got to have probable cause to do that.  You know, just 'cause I've been saying I'm going to blow up a building, you know what I mean? Come on, man.

CHS:        Yeah, (unintelligible)...

Ibraheem:   (Unintelligible) we just talking about a movie. (Unintelligible)

CHS:        (Laughs)

Ibraheem:   (Unintelligible)

CHS:        Ah, hamdulillah.  What are, what are you doing right now?

            (TRANSCRIPTION STOPS 10:15:08)

            (TRANSCRIPTION RESUMES AT 10:17:45)

6

| | |
|---|---|
| Ibraheem: | But, uh, I was just calling, you know, look up (unintelligible) need to find out something, man, 'cause, uh, I mean, that, that day, man, ain't got nothing to do with us, man, (unintelligible). |
| CHS: | Okay. Okay. I, I'm waiting on a call anyway. |

(TRANSCRIPTION STOPS.)

## IMPOSITION OF A GUIDELINES SENTENCE IS APPROPRIATE HERE

Adam Ibraheem consented to detention when he was arraigned in October 2009, because he is subject to a parole detainer in the State of Michigan, and because he has unresolved charges in Massachusetts. He is asking this Court to sentence him to time served; he is hoping neither Michigan nor Massachusetts will give him additional time for violating parole.

## CONCLUSION

A sentence of time served would not serve the interests of justice in this case. This defendant has shown over and over again that he has no respect for the law, and no regard for the criminal justice system. A sentence of time served, just over 15 months, would convey to him only that he has beaten the system again. Adam Ibraheem's sentencing guidelines are 21 to 27 months, and the government urges this Court to impose a sentence within that range.

                                       Respectfully submitted,

                                       BARBARA L. McQUADE
                                       United States Attorney


                                       s/ Cynthia Oberg
                                       CYNTHIA OBERG  (P 36338)
                                       Assistant U.S. Attorney
                                       (313) 226-9701
                                       cynthia.oberg@usdoj.gov


                                       s/ Kevin M. Mulcahy
                                       KEVIN M. MULCAHY
                                       Assistant U.S. Attorney
                                       (313) 226-9713
                                       kevin.mulcahy@usdoj.gov


Dated: February 28, 2011
: